(No. 6768—)

ROY R. TAEGER, Father of SHARON TAEGER, deceased, Et Al., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 25, 1975.*

KENNETH E. BAUGHMAN, Attorney for Claimants.

WILLIAM J. SCOTT, Attorney General; HOWARD W. FELDMAN, Assistant Attorney General, for Respondent.

PERLIN, C. J.

This wrongful death action arises out of an automobile accident which occurred on June 15, 1970, on Highway 34 in Henderson County, Illinois. The State of Illinois is responsible for the construction, repair and maintenance of Highway 34, and Claimant contends that the accident was proximately caused by the negligent failure of Respondent to provide adequate warnings that Highway 34 terminated at the accident site.

On June 15, 1970, Roy Taeger, his wife Dianne, his son Lyle, and his infant daughter Sharon were proceeding westbound on Highway 34 to Burlington, Iowa, from Clinton, Illinois. They were unfamiliar with the high-

way. Roy Taeger was driving a 1966 Ford station wagon. The weather was clear and road conditions and visibility were excellent.

Highway 34 is a four lane, divided road with two lanes in each direction separated by a median approximately 40 feet wide. Just east of the accident site Highway 34 traverses a grade as it passes over Route 150. The speed limit on the road was 65 miles per hour.

At the accident site Highway 34 ended with a tapered barricade which directed traffic off the westbound lanes and onto an exit ramp located on the west incline of the overpass over Highway 150. The barricade consisted of a series of weighted barrels from which hazard markers extend to a height of about seven feet above the road surface. The barrels extended from the south edge of the westbound lanes and angled in a northwesterly direction across both westbound lanes to the intersection of the west edge of the exit ramp and the north edge of Highway 34.

At the mouth of the exit ramp there was a speed control sign stating "Ramp Speed 30."

Approximately 680 feet east of the gore of the exit ramp, four foot by four foot orange signs were placed on either side of the highway stating "Expressway Ends." Mounted just below these signs on the same signposts were smaller signs stating "Form Single Lane to Right."

Approximately 2,600 feet east of the gore was an informational sign along the right hand side of the road indicating to drivers the direction they were to travel.

Roy Taeger testified that he was proceeding westbound on Highway 34 in the right lane when the car and truck he was following began slowing down. He estimated that when he was about one mile from the bridge over Route 150 he pulled into the left hand lane

to pass the slower vehicles. He passed the car that had been immediately in front of him and had pulled approximately even with the truck when, near the top of the grade over 150, he saw the barrels across the westbound lanes of the highway. Taeger said that at the same time he noticed that there was traffic in front of the truck in the right lane which would prevent him from entering the right lane and exit ramp. He said he applied his brakes at this point, which he estimated to be about 500 feet from the barrels, and tried to negotiate the exit ramp curve at about 45 miles per hour. However his car struck the guard rail along the left side of the road, blew a tire, and rolled down an embankment along the side of the highway. Sharon Taeger, the 11-month old daughter of Claimant, was thrown from the car and killed.

Taeger testified that prior to the accident he had not observed any signs or traffic control devices indicating that Highway 34 was ending.

Jack Chick, an investigator hired by Claimant, testified that in the course of investigating this accident he traveled over Route 34 at the accident site three times. He said that he did not observe the barrels across the road until he was about half way across the bridge over Route 150, or about 500 feet from the barrels.

Harriett Knepp, the driver of the automobile which Claimant passed just before the accident, testified that she was traveling 50 to 55 miles per hour when passed by the Taeger vehicle. She said that she had driven past the accident site several times and that a driver could not see the barrels at the end of the highway until he had almost cleared the crest of the bridge over Route 150.

Claimant introduced into evidence Standard 2316-2 of the State of Illinois Manual of Uniform Traffic Control Devices relating to application of traffic control

devices for highway construction and maintenance. The Standard provides, in essence, that where a four-lane, divided highway is undergoing maintenance or construction which requires a lane closure specified warning signs must be placed along both sides of the road at specified intervals. The Standard requires warning signs 500 feet from the gore of the road, 1000 feet from the gore, and 1,500 feet from the gore. In addition, a directional sign is required 2,000 feet from the gore, and additional warning signs are specified at points 2,600 feet and 5,000 feet from the gore.

Claimant also introduced into evidence the introductory portion of the Manual relating to Standard 2316-2, which provides in part:

This section sets forth basic principles and prescribes minimum standards to be followed in the design, application, installation and maintenance of all types of temporary traffic control devices required for road construction and maintenance operations.

☆ ☆ ☆

The prescribed standards were developed primarily as the minimum desirable application for State maintained highways.

Charles Dykeman was the driver of the truck that Taeger passed immediately prior to the accident. The written statement of Dykeman was admitted into evidence by stipulation, and provided, in part:

I observed the Taeger vehicle come up behind me in my outside rearview mirror and pass me while I was on the bridge over U.S. Route 150. I wondered why he was passing me and at such a high rate of speed, which I would estimate at somewhere between 65 to 70 miles per hour. I honked my horn at him to get him to slow down as he approached the curve, however, when he did apply his brakes, it was much too late to avoid the accident. The car was not weaving or bobbing, but it had just passed me on the bridge and prior to the curve. I feel the car was already into the curve (exit ramp) before the driver attempted to slow down. The vehicle struck the end of the guard rail and appeared to go straight up into the air and possibly land on the top, although I could not see because it dropped into a ditch, which blocked my view .... I was under the impression that the driver may have dozed off momentarily before the curve. There was no other vehicle between me and the Taeger vehicle. I thought that when he passed me on the bridge that if he didn't slow down, he would hit the rear of the brown 1960 Oldsmobile that was previously in front of me.

Respondent introduced into evidence photographs of Highway 34 taken at various distances east of the barricade. These photographs show that the very tops of the hazard markers atop the barrels became faintly visible to westbound motorists about 1,900 feet east of the gore of the highway. At a point about 950 feet east of the gore, the barrels and markers are plainly visible to westbound traffic.

Carroll Holloway, an employee of the Illinois Department of Transportation, was an Assistant Field Traffic Engineer responsible for the signing along Highway 34 at the time of the accident. He testified that Route 34 was not under construction or maintenance on June 15, 1970, and that the barrel barricade had been in place since December, 1965. He also stated that the "Expressway Ends" signs located approximately 650 feet from the gore of the highway were within the normal range of placement for such signs.

Robert Campbell, the Illinois State Trooper who investigated the accident, testified that as he approached the accident scene from the east the barrels became visible as he approached the eastern edge of the bridge over Highway 150.

Claimant contends that the State did not provide adequate warning devices at approaching the end of Highway 34. Claimant urges strongly that the failure of Respondent to comply with Standard 2316-2 of the State of Illinois Manual of Uniform Traffic Control Devices is evidence of negligence. Respondent replies that that Standard is not applicable to the instant situation, that the warning signs provided along Highway 34 were adequate, and that the proximate cause of the accident was the negligent failure of Roy Taeger to observe and heed the signs indicating the end of the highway.

In *Emm v. State, 25 Ill.Ct.Cl. 213,* this Court held

that the State must keep roadways under its jurisdiction and control in a reasonably safe condition for the purpose to which the portion in question is devoted. The Court added, ". . . the placing of adequate signs warning of the conditions to be met fulfills the obligation of the State to the users of the highway." The burden rests upon Claimants to prove by a prepondernace of the evidence that the signs erected by Respondent were inadequate to warn of the termination of Highway 34; that Claimants were free of contributory negligence; and that the negligence of the Respondent was the proximate cause of the accident.

Standard 2316-2 of the Illinois Manual of Uniform Traffic Control devices is not conclusive of either the type or placement of the signs which should have been erected at the termination of Highway 34. The Standard is, by its own terms, applicable to the erection of temporary traffic control devices where a road is under maintenance or construction. Carroll Holloway, a traffic engineer employed by Respondent, testified that the Standard was not applicable to the instant situation. However, even if the Standard is considered as indicative of what does constitute adequate warning of the termination of Highway 34, see *Merchant's National Bank of Aurora v. Elgin, Joliet and Eastern Railway Co., 49 Ill.2d 118, 273 N.E.2d 809, 812,* we find that the State did not so deviate from the Standard as to be chargeable with negligence.

Standard 2316-2 calls for placement of signs warning of a lane closure at 500-foot intervals, beginning at a point 1,500 feet from the gore of the road; a directional sign 2,000 feet from the gore; and warning signs at points 2,600 feet and 5,000 feet from the gore.

At the termination of Route 34, Respondent placed hazard markers which were clearly visible at a point

950 feet east of the barricade. Photographs introduced into evidence show that these hazard markers began becoming visible to westbound traffic approximately 1,900 feet from the barricade. Further, 680 feet east of the gore, four foot square orange warning signs were placed on each side of the highway stating, "Expressway Ends." Under these signs were smaller signs stating, "Form Single Lane to Right." Finally, 2,600 feet east of the gore was an informational sign along the right side of the road which indicated to drivers the direction westbound traffic was to take.

These signs and hazard markers substantially complied with the requirements of Standard 2316-2 and provided adequate warning of the termination of the highway.

Further, Roy Taeger testified that he did not see any of the informational or warning signs along Highway 34, and that he first became aware of the existence of the barricade when he was about 500 feet from the end of the highway.

The Court is convinced that it was his failure to observe and heed these clearly visible signs which was the proximate cause of this accident.

The Court regrets this tragic occurrence, but the evidence shows that Respondent did provide adequate warning signs indicating the termination of Highway 34, and that the negligence of Roy Taeger proximately caused the accident.

This claim is therefore denied.